WILLIAMS, J.
In these consolidated cases, the district courts granted summary judgments in favor of the plaintiffs, National Collegiate Student Loan Trust 2005-2 and National Collegiate Student Loan Trust 2004-2. The *1188 defendants, Victoria Henderson and Carolyn Henderson, appeal. For the following reasons, we affirm.
FACTS
In 2004 and 2005, the defendants, Victoria Henderson ("Victoria") and Carolyn Henderson ("Carolyn"), obtained multiple Education One Undergraduate Loans issued through Bank One, N.A.[1] Victoria is Carolyn's daughter and the loans were obtained to pay for Victoria's college education.[2] At some point, the loans were sold or transferred to National Collegiate Student Loan Trust ("National Collegiate"). In 2009, Carolyn began repaying one of the loans; she began repaying the other loan in 2010. In July 2012, Carolyn checked her credit report, which, according to her, reflected that the loans had been "paid in full" in September 2009.[3] At that point, Carolyn stopped making payments because she erroneously believed that her debt had been either "forgiven" or "paid off." However, a closer review of Carolyn's credit report revealed that the loans had, in fact, been "charged off" and "transferred to recovery."
In December 2012, the Eaton Group Attorneys, LLC, the law firm that represents National Collegiate, informed Victoria and Carolyn that the balances on the loans were still due. According to Carolyn, she was confused because she had never entered into a loan agreement with National Collegiate, and she was unaware that the loans had been transferred to that entity. Nevertheless, after further discussions, Carolyn began making payments to the Eaton Group in July 2013.[4]
On September 6, 2013, the plaintiff, National Collegiate Student Loan Trust 2005-2 ("Case No. 1"), filed a lawsuit against Victoria and Carolyn, to collect on an "open student loan account" in the amount of $42,595.75, "together with accrued interest of $5,797.78, in addition to interest from the date of judgment and attorney fees in the *1189 amount of 25% of the total of both principal and interest, and all costs of these proceedings, subject to a credit of $50.00." The defendants were served with the petition, along with requests for admission of facts.
Subsequently, on September 16, 2013, the plaintiff, National Collegiate Student Loan Trust 2004-2 ("Case No. 2"), filed another lawsuit against the defendants to collect on an alleged "open student loan account" "in the full sum of $32,578.31, together with accrued interest of $4,916.11," in addition to interest from the date of judgment and attorney fees "in the amount of 25% of the total of both principal and interest, and all costs of these proceedings, subject to a credit of $50.00." The defendants were also served with this petition, along with requests for admission of facts.[5]
Thereafter, the defendants, appearing in proper person, filed answers to the petitions, generally denying the facts alleged therein. Thereafter, the plaintiffs propounded interrogatories in both cases, with which the defendants were served. Initially, the defendants did not answer requests for discovery. Rather, Carolyn mailed correspondence to the Eaton Group to support her contention that the loans and been "paid in full."
Subsequently, Carolyn Henderson responded to interrogatories propounded as follows:
NOTE INTERROGATORIES
* * *
I. The creditor indicates a balance on the note of $32,578.31 as of May 8, 2013. Do your records reflect otherwise and if so, please describe.
Answer: Yes. I have already forwarded you the updated documents.
II. The creditor indicates that all funds described in the note were advanced. Do your records reflect otherwise and if so, please describe.
Answer: Yes. I have already forwarded you the updated documents.
III. The creditor indicates that all payments and credits have been applied to the balance. Do your records reflect otherwise and if so, please describe.
Answer: I agree with creditor that all payments and credits have been applied to balance, which the current balance is 0 on all 3 accts, which my records reflect.
IV. The note includes various terms, including provision for interest and attorneys fees as reflected in the petition. These terms were agreed upon when you signed the note. Please fully describe any terms which you feel are not accurately reflected in the petition, full detail the suggested accurate terms; and describe and attach any document which substantiates an agreement as to any different terms.
Answer: All three accounts are paid in full. Denies any and all attorney fees.
However, the defendants did not file any answers to requests for discovery filed in regard to Case No. 1. Additionally, the defendants did not respond to requests for admissions of fact in either case.
On January 16, 2015, the plaintiffs filed a motion for summary judgment, or in the alternative, a motion to compel answers to discovery. A hearing was set for April 27, 2015. However, the defendants obtained counsel, who filed a motion to enroll on April 10, 2015. Thereafter, the defendants filed a motion to continue the hearing; the motion to continue was granted and the matter was "to be set at a later date." On June 16, 2015, the defendants' attorney filed a motion to withdraw. The district court granted the motion to withdraw and granted to the defendants "sixty (60) days to obtain new counsel." Consequently, the plaintiffs' first motions for summary judgment/motions to compel answers to discovery were not heard.
On September 10, 2015, the plaintiffs filed another motion for summary judgment/motion to compel in both cases. With regard to Case No. 1, the plaintiffs submitted the following documents in support of the motion for summary judgment:
*1190 The petitions and the defendants' answers to the petitions;
Discovery requests (requests for admission of facts, requests for genuineness of documents, requests for production of documents, note interrogatories and domestic interrogatories);
Multiple letters to the defendants regarding Rule 10.1 conferences and requesting answers to discovery;
Carolyn's responses to interrogatories;
A supplemental affidavit of correctness of account signed by Kim Sibley, who attested as to the unpaid balance on the loan;[6]
Two affidavits and verifications of account signed by Dudley Turner and Coleen Morgan,[7] who attested that they were familiar with the education loan records, and that the defendants had "failed, refused, and/or neglected to pay the balance or balances pursuant to the agreed repayment schedule or schedules." Turner and Morgan also attested that all payments made by the defendants had been applied to the account and they owed "the principal sum of $42,595.75, together with accrued interest in the amount of $5,797.78, totaling the sum of $48,393.53 as of 2/25/2014."[8]
Notice letters regarding the debts from Eaton Group attorneys to the defendants;
A Pool Supplement regarding the note transfer to The National Collegiate Funding, LLC;[9]
Note disclosure statement;
A copy of loan request/credit agreement signed by the defendants on May 18, 2005;[10] and
Loan payment history reports
With regard to Case No. 2, the plaintiffs submitted the following documents:
The petitions and the defendants' answers to the petitions;
Discovery requests (requests for admission of facts, requests for genuineness of documents, requests for production of documents, note interrogatories and domestic interrogatories);
Multiple letters to the defendants regarding Rule 10.1 conferences and requesting answers to discovery;
Carolyn's responses to interrogatories;
A supplemental affidavit of correctness of account signed by Kim Sibley, who attested as to the unpaid balances on the loan;
An affidavit and verification of account signed by Demetrius Nickens,[11] who attested that he was familiar with the education loan records in Case No. 2, and that the defendants had "failed, refused, and/or neglected to pay the balance or balances pursuant to the agreed repayment schedule or schedules." Nickens also attested that all payments made by the defendants had been applied to the account and they owed "the principal sum of $32,578.31, together with accrued interest in the amount of $4,916.11, totaling *1191 the sum of $37,494.42 as of 11/4/2013";
Notice letters regarding the debts from Eaton Group attorneys to the defendants;
A Pool Supplement regarding the note transfer to The National Collegiate Funding, LLC;[12]
Note disclosure statement, indicating that a loan was issued to the defendants on August 26, 2004, in the principal amount of $21,857.92;
A copy of loan request/credit agreement signed by the defendants on August 17, 2004;[13]
Loan payment history reports.
The defendants did not file a formal response to either motion for summary judgment. However, in Case No. 2, on November 30, 2015, the defendants submitted the affidavit of Carolyn Henderson, in which she attested as follows: (1) she had "not stopped making payment[s] since 2013"; and (2) the total amount she has paid on the loans is $9,483.40. The defendants also attached a supplemental affidavit executed by Carolyn, in which she again attested that the "records should reflect that I have not missed a payment since 2013 and the correct amount that should be credited to the balance of the loan is $9,483.40."[14] The defendants also filed a "statement of contested facts," in which Carolyn Henderson again stated that she had "been making monthly payments and currently pays $150 per month." She also stated that she had paid a total of $9,483.40, which was "not accurately reflected in the National Collegiate documents." The defendants attached copies of Carolyn's bank statements from Chase Bank which showed that beginning in 2009, Carolyn made numerous online payments to various entities, including American Education Services ("AES"), Sallie Mae, National Enterprise Systems, Inc. and MRS Associates, Inc. ("MRS").[15] With regard to these entities, the bank statements do not contain any information as to which student loans were paid. However, Carolyn's bank statements reflect that between July 2013 and November 2015, she made a total of 28 payments to the Eaton Group in the amount of $150 each, totaling $4,200.
Hearings were held in both cases. At both hearings, the defendants represented themselves and admitted that they incurred the student loan debts in 2004 and 2005. However, Carolyn argued that after checking her credit report, she believed the loans were forgiven, thus freeing her and her daughter from making additional payments. In response, the plaintiffs argued that Carolyn's credit report clearly stated that the balance on the loans had been transferred to collections.
At the conclusion of the hearing regarding Case No. 1, the district court granted *1192 summary judgment in favor of the plaintiff, stating:
I'm going to grant them their summary judgment, all right, because you've got to have an opposition filed within a certain period of time saying either I don't owe it or I don't owe this amount, something to show that. But I'm sure they'll work with you on a payment plan.
* * *
This is a summary judgment. It's just saying that you owe this money to them. * * * Now, payment arrangements are between you and the creditor.
* * *
The court rendered summary judgment in favor of the plaintiff in the amount of $42,595.75, "together with accrued interest of $5,797.78, and additional interest of 4% from the date of judgment, subject to a credit of $1,150.00, and for all costs of these proceedings."
Likewise, with regard to Case No. 2, the district court granted summary judgment "in the full sum of $32,578.31, together with accrued interest of $4,916.11, and additional interest of 4% from the date of judgment, subject to a credit of $1,150.00 and any additional amount paid by defendants[.]" The court stated:
* * *
[T]he letter that you sent to the Court dated November 27, 2015, and I believe, I believe what you have just handed the Court, this Experian report was attached to that letter * * * and so I will give the benefit of the doubt that this letter dated November 27, 2015, and accept that as an opposition to the motion for summary judgment.
* * *
Having said that, ma'am, I still don't see that there is a material issue of fact. You've admitted that, although you looked at these reports, that these amounts that are showing as recent payments, in quotations, that you did not pay those, nor did your daughter pay those. And what that appears * * * is that they were just written off so this action could take place.
* * *
[H]aving heard from the defendants and looking at the response to the motion for summary judgment * * * I still don't see that there is a genuine issue of fact as to whether this debt is owed. The defendants admitted that they stopped making payments on these loans. The reports show that these amounts were, quote, transferred to recovery. The defendants admitted they did not pay these amounts that are reflected here, and they are owed. And so the motion for summary judgment is granted as prayed for, with a credit given to the defendants for all amounts that they have paid.
* * *
The defendants appeal.[16]
DISCUSSION
The defendants contend the district courts erred in granting summary judgment in favor of the plaintiffs. The defendants admit that the existence of the debt is not in dispute: they admitted that they signed the promissory notes and they did not pay the loans in full. Nevertheless, the defendants maintain that a genuine issue of material fact remains as to the remaining balances on the loans. More specifically, the defendants maintain that the plaintiffs' records are insufficient to prove the accuracy of the payment history.
A party is entitled to summary judgment if, on the record before the court, it appears "that there is no genuine issue as to any material fact and that the movant is *1193 entitled to judgment as a matter of law." La. C.C.P. art. 966 ; Willis v. Medders , 2000-2507 (La. 12/08/00), 775 So.2d 1049 ; National Collegiate Student Loan Trust 2003-1 v. Thomas , 48,627 (La. App. 2 Cir. 11/20/13), 129 So.3d 1231. The motion for summary judgment should be denied if a genuine issue of fact exists and the fact is material to the case. La. C.C.P. art. 966 ; Duncan v. U.S.A.A. Ins. Co. , 2006-0363 (La. 11/29/06), 950 So.2d 544.
Even if the nonmoving party does not respond to the motion for summary judgment, the court is still obligated to inquire whether the moving party has met its burden of demonstrating undisputed facts entitling it to summary judgment as a matter of law. Willis v. Medders , supra ; National Collegiate Student Loan Trust 2003-1 v. Thomas , supra . Appellate courts review summary judgments de novo , using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. La. C.C.P. art. 966(B) ; Garrison v. State Farm Fire & Cas. Co. , 51,245 (La. App. 2 Cir. 4/5/17), 217 So.3d 586 ; Argonaut Great Central Ins. Co. v. Hammett , 44,308 (La. App. 2 Cir. 6/3/09), 13 So.3d 1209, writ denied , 2009-1491 (La. 10/2/09), 18 So.3d 122.
Case No. 1
As stated above, in Case No. 1, in support of the motion for summary judgment, the plaintiff introduced into evidence various documents and affidavits, including a copy of the promissory note, which the defendants admitted that they signed. The plaintiff also submitted a document entitled "Loan Payment History Report," which reflects payments made by the defendants from October 2009 until July 2012; the last payment received from the defendants was dated July 13, 2012. According to the loan history report, during that time, the defendants paid $2,053.71 toward the interest on the loan, and $0.00 toward the principal. The report also reveals that $42,595.75 had been "charged off." Further, Carolyn admitted that she began repaying the loan in 2009, and she stopped making payments after she reviewed her credit report in 2012. As noted above, the defendants did not respond to the motion for summary judgment and did not submit any evidence in response thereto. The defendants appeared at the hearing and Carolyn admitted that she stopped repaying the loan because she erroneously believed the debt had been forgiven or paid in full. Accordingly, we find that the district court did not err in granting summary judgment in favor of the plaintiff in Case No. 1.
Case No. 2
As stated above, the defendants did not file a formal response to the motion for summary judgment in Case No. 2. However, they submitted the affidavit and supplemental affidavit of Carolyn Henderson, in which she did not deny the existence of the debt. Rather, she maintained that, in addition to the amount she paid from 2009 through 2012, she had begun making payments to the Eaton Group in 2013. According to Carolyn, she paid a total of $9,483.40 towards the balance of the loans.
Our review of the record shows that the loan payment history report submitted by the plaintiffs reveals that the defendants began repaying the loan in May 2010, and the payments ceased in July 2012; the last payment made was dated July 13, 2012. The loan repayment history provides that from May 2010 until July 2012, Carolyn paid $1,088.81 towards the interest on the loan and $0.00 towards the principal. Additionally, the report states that $32,578.31 had been "charged off." As stated above, Carolyn admitted that she stopped making payments in 2012. A review of the bank records submitted in Case No. 1 reveals *1194 that Carolyn paid $3,380 to MRS between May 2010 and July 2012. Although Carolyn's banking records do not indicate which payments were made to which student loans,[17] a comparison of the dates from the loan payment history report and Carolyn's banking records suggests that the amounts drafted from Carolyn's bank account, payable to MRS, were applied to the student loans at issue. Additionally, a review of Carolyn's bank records reveals that $150 per month, payable to the Eaton Group Attorneys, LLC, was drafted from her bank account from July 2013 until November 2015.[18]
In reviewing this record de novo , we find that the district court did not err in granting summary judgment in favor of the plaintiff. Although the loan payment history submitted by the plaintiff did not reflect the amount paid to the Eaton Group after these proceedings commenced, the judgment clearly provided that the defendants would be given "a credit of $1,150.00 and any additional amount paid by defendant[s.] ." (Emphasis added). Moreover, although Carolyn's bank records show that she has made monthly payments to various student loan entities, the record does not demonstrate that she paid $9,483.40 toward the balance of the loans in dispute. Carolyn admitted that she has other student loans in addition to the loans at issue in this case. The records she submitted to the court did not support her contention that she paid that amount on the loans in this case. This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, we hereby affirm the district courts' grant of summary judgment in favor of the plaintiffs, National Collegiate Student Loan Trust 2005-2 and National Collegiate Student Loan Trust 2004-2. Costs of this appeal are assessed to the defendants, Carolyn Henderson and Victoria Henderson.
AFFIRMED.

In 2004, Bank One, N.A. was acquired by JP Morgan Chase Bank, N.A.

Although both defendants signed the loan agreements, Carolyn testified that it was always her intention to repay the loans; she never intended for Victoria to be liable for repayment of the debt.

The defendants introduced into evidence a copy of Carolyn's Experian credit report. With regard to the loan account opened in August 2004, in the amount of $21,857, the credit report stated, "Recent balance $0 as of Sep 2009 * * * Recent payment $32,578." However, the report further provided as follows:
Status
Account charged off. * * *
Comment
Transferred to recovery.
* * *
Regarding the loan account opened in May 2005, Carolyn's credit report stated, "Recent balance $0 as of Aug 2009 * * * Recent payment $42,595." The report further provides:
Status
Amount charged off. * * *
Comment
Transferred to recovery.
* * *

Carolyn's bank statements show that she made payments in the amount of $150 per month to "Eaton Group Attorneys, LLC" from July 2013, through November 2015.

The cases were not consolidated in the district court. Therefore, the matters were heard by different judges.

Sibley attested that she was an employee of the Eaton Group and that she was "primarily responsible for this file" and that she was "familiar with the defendants' STUDENT LOAN account." (Emphasis in original).

Turner and Morgan attested that they were employed by NCO Financial Systems, Inc., the custodian of records for the plaintiffs.

In her affidavit, Morgan attested that the sum of $48,393.53 was due "as of 9/21/2013."

The Pool Supplement indicated that the plaintiffs purchased a bundle of student loans from Bank One on June 9, 2005.

Turner attested that the copy was "a true copy of the underlying Credit Agreement/Promissory Note."

Nickens attested that he was employed by NCO Financial Systems, Inc., the custodian of records for the plaintiffs.

The Pool Supplement indicated that the plaintiffs purchased a bundle of student loans from Bank One on October 8, 2004.

Turner attested that the copy was "a true copy of the underlying Credit Agreement/Promissory Note."

In the affidavit, Carolyn attested as follows:
* * *
2. I MAKE THIS MY AFFIDAVIT IN SUPPORT OF MY APPLICATION OF CORRECTNESS OF ACCOUNT. I WANT THE COURT TO SHOW THE CORRECT AMOUNT OF PAYMENTS CREDITED TO THE BALANCE OF THE LOANS AND TO SHOW THAT I HAVE NOT STOPPED MAKING PAYMENT SINCE 2013. THE TOTAL AMOUNT OF THE PAYMENTS THAT SHOULD BE CREDITED TO THE BALANCE OF THE LOAN IS $9483.40.
* * *

National Enterprise Systems, Inc. and MRS Associates, Inc. are debt collection agencies.

By order dated August 22, 2017, this Court consolidated these matters.

As stated above, Carolyn admitted that she has other student loans, including one that is the subject of litigation in a Baton Rouge court.

Payments to AES and Sallie Mae continued to be drafted from Carolyn's bank account. However, there is no evidence that those payments were related to the two student loans at issue in this case.